# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SCOTT, | 1:08-cv-1194 GSA |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff, Jose Scott ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 8, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

On or about January 24, 2006, Plaintiff filed applications alleging disability since August 25, 2000. AR 60-64, 182-186. His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A.R. 22-27, 36, 174-182. ALJ Christopher Larsen held a hearing on December 4, 2007, and issued an order denying benefits on February 28, 2008. AR 12-21; 189-214. On January 19, 2009, the Appeals Council denied review. A.R. 5-8.

Hearing Testimony

ALJ Larsen held a hearing on December 4, 2007, in Fresno, California. Plaintiff appeared and was represented by Robert Christenson. A.R. 191.

Plaintiff testified that he was forty nine years old at the time of the hearing. A.R. 194. He completed the ninth grade in Mexico. A.R. 195. He can read and write a little English and understands spoken English. A.R. 195. He was previously a farm laborer. A.R. 195. From 1989 to 2000 he worked at an oil field. 195-196. Plaintiff has not worked since 2000 due to diabetes. A.R. 196. He has lost 40 lbs. A.R. 195 -197. His blood sugar was 234 the morning of the hearing. A.R. 197. Plaintiff also suffers from arthritis resulting in pain in his fingers, foot, arms, and shoulders, which prevents him from sleeping at night. A.R. 197.

Plaintiff is left hand dominant and suffers from weakness in his left arm. A.R. 197-198. He can lift no more than ten pounds in his left hand. A.R. 198. His fingers lock up and he is unable to use his fingers on a keyboard or computer. A.R. 198. He also has difficulty using small instruments or tools. A.R. 199. He is unable to stand for more than thirty minutes. A.R. 199. He can sit for one and a half hours and then his legs fall asleep. A.R. 200. He can walk one block. A.R. 200. He needs to nap for approximately thirty minutes twice a day because he is unable to sleep at night. A.R. 200. Two times a week he stays in bed most of the day because he cannot function very well. A.R. 201. Plaintiff takes Neurontin and Motrin to help treat his pain. A.R. 202.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

A normal day for Plaintiff entails watching television, going to see his friends, and feeding the dog. A.R. 203. Plaintiff lives with his wife. His wife does the cooking and washes Plaintiff's clothes. A.R. 203. Plaintiff sometimes cleans the house. A.R. 203.

Plaintiff's driver's license was taken away approximately three years ago due to driving while intoxicated. A.R. 203-204. Plaintiff did not finish the necessary classes to renew his license so he has not had a license since that time. A.R. 204. He is able to dress himself but is unable to tie shoelaces. A.R. 204.

Vocational Expert (VE) Cheryl Chandler testified that Plaintiff's past work experience included work as a derrick hand, general farm labor, and a mechanic. A.R. 208-209. She classified his past work as semi-skilled, medium to heavy. A.R. 209. The VE was asked to assume a worker of Plaintiff's education and work experience who can lift and carry 20 pounds occasionally, ten pounds frequently, stand and walk a total of six hours and sit a total of six hours, who can "frequently finger and feel and frequently handle." A.R. 209. VE Chandler advised that a worker possessing these characteristics could not perform Plaintiff's past relevant work, however this worker could perform other jobs in the regional or national economy. A.R. 209-210. Consistent with a unskilled light level, this worker could perform jobs such as an usher, ticket taker, and ironer. There are 7,000, 10,700, and 57,500 of those jobs, respectively, in California. A.R. 210.

In the second hypothetical, the VE was asked about a worker with Plaintiff's education and work experience, who can lift and carry ten pounds occasionally, less than ten pounds frequently, can stand a total of four to five hours in a day, but can walk a total of only two and can sit for a total of six hours. VE Chandler testified this worker would be classified as unskilled sedentary and that there would be only 1,000 jobs remaining. A.R. 211.

<u>Medical Record</u>

The record consists of numerous reports from Family Health Care Network, Linsday Health Center, and the Hillman Health Center Clinical Laboratory covering Plaintiff's diagnosis and treatment beginning on August 23, 2000, and ending June 1, 2007. A.R. 105-173. The notes indicate that Plaintiff received treatment for complaints regarding diabetes mellitus, alcohol

induced chronic pancreatitis, hypertension, and hyperlipidemia. A. R. 141, 143, 145. The records also indicate that Plaintiff has complained of neck, shoulder, back, leg and joint pain. A.R. 110, 113, 125, 129, 134, 136, 169.[3]

Plaintiff was first seen by Dr. Leticia Escoto, M.D. at Porterville Patient Encounters on August 23, 2000, for a severe stomach ache. A.R. 147. Plaintiff was advised to go to the emergency room for treatment but refused. A.R. 147. It was noted that Plaintiff had lost twenty pounds over the past six month period, drank ten beers a day, and smoked tobacco. A.R. 147. The epigastric pain was suspected to be pancreatitis and Plaintiff was diagnosed with diabetes. A.R. 147. Plaintiff was subsequently treated by Dr. Escoto on August 25, 2000, September 5, 2000, October 9, 2000, for diabetes mellitus, alcohol induced chronic pancreatitis, sludge in the gallbladder and hyperlipidema. A.R. 141, 143, 145.

On October 19, 2000, and October 20, 2000, Plaintiff was examined by Dr. Leticia Escoto, for shoulder pain. A.R. 136. Dr. Escoto noted an injury in Plaintiff's left shoulder rotator cuff. A.R. 136, 139. An x-ray revealed evidence of arthritis. A.R. 136-137. Plaintiff was prescribed Torodol IM and given Motrin. He was also given Kernalog and Lidocaine into his left shoulder and immediately felt relief. A.R. 136. Plaintiff was instructed to follow-up in one week. A.R. 136. Plaintiff was also diagnosed with hyperlipidemia and diabetes. A.R. 139. Plaintiff was examined by Dr. Escoto again on November 3, 2000 for shoulder pain. A.R. 134. A left rotator cuff injury was noted and an orthopedic referral was recommended. A.R. 134.

Plaintiff was not seen by Dr. Escoto again until April 1, 2001, after he was involved in a car accident. A.R. 129. Plaintiff was referred to an orthopedist for neck pain. A.R. 129.

Plaintiff was examined for the same injury by Dr. David Frelinger, M.D. at Family Health Care on April 26, 2001. A.R. 131-132. Dr. Frelinger noted that x-rays done at Sierra View District Hospital were negative. A.R. 131. Plaintiff was diagnosed with cervical myofasciitis

---

[3] Each medical record is not outlined in this opinion. However, the court has reviewed all of the materials contained in the Administrative Record. The Court has highlighted only those records which are most relevant for the issues presented in this case.

and atrophy of the left shoulder girdle. Plaintiff was prescribed Parafon Forte with Tylenol, and an exercise regimen was recommended. A.R. 131-132.

Plaintiff returned to Dr. Escoto on April 30, 2001. A.R. 129. It was noted that Plaintiff suffered from a neck sprain and had a left rotator cuff injury with atrophy of the left shoulder and weakness. A.R. 129. A history of diabetes was noted. A.R. 129. Plaintiff was referred again to an orthopedist regarding his neck pain. A.R. 129. Dr. Escoto noted that she had previously sent Plaintiff to an orthopedist for his shoulder problem and Plaintiff was sent back. A.R. 129.

On November 1, 2001, Plaintiff was seen by Liberty Lomeli, Physician's Assistant, at Family Healthcare Network, Porterville, California, for back pain. A.R. 125. He was diagnosed with osteoarthritis with back pain, and diabetes mellitus, uncontrolled. A.R. 125. He was prescribed Naprosyn and given samples of Glucotrol. A.R. 125. He was told to follow-up in two weeks if symptoms worsened. A.R. 125.

On December 1, 2001, Plaintiff was again seen by Ms. Lomeli, for his diabetes. A.R. 123. Ms. Lomeli prescribed Glucotrol and recommended that Plaintiff be seen in one week. A.R. 123. Plaintiff did not return to see Ms. Lomeli, until over two years later on April 1, 2004, when he was treated for allergic conjunctivitis. A.R. 121. Plaintiff was prescribed 45 mg of Actos to be taken twice a day. A.R. 121. Plaintiff was ordered to follow-up in one week to see if his blood sugar improved. A.R. 121.

On January 19, 2006, and February 4, 2006, Plaintiff was seen again by Liberty Lomeli, A.R. 110, 113. Ms. Lomeli noted that Plaintiff had not been seen in over two years and had not been taking medications for his diabetes. A.R. 113. Plaintiff was scheduled for an appointment with a dietician. A.R. 113. Ms. Lomeli again prescribed Glucotrol for Plaintiff. A.R. 113. Plaintiff was seen by Nutritionist, Patricia Vega-Duran on February 9, 2006, at Family Healthcare Network.[4] A.R. 109. Plaintiff subsequently was seen by Ms. Lomeli on March 23, 2006, and again it was noted that Plaintiff had been noncompliant with his treatment for diabetes. A. R 113.

---

[4] Plaintiff did not attend an appointment to see Nutritionist, Patricia Vega-Duran, however, the date of the appointment is illegible on the progress note. A.R. 106.

On April 12, 2006, Plaintiff was examined by Dr. Buttan, M.D. who indicated that there were no neurological deficits, Plaintiff's gait was normal, and that his deep tendon reflexes were normal. A.R. 149.   Dr. Buttan noted tenderness on the left foot of the dorsum, however there was no deformity of the foot noted and Plaintiff did not require an assistive device to walk. A.R. 149. Furthermore, although Dr. Buttan noted pain in both of Plaintiff's knees and shoulders, Plaintiff's range of motion in both knees and shoulders was normal. A.R. 149.  Plaintiff's straight leg test was about 60 to 70 degrees in both legs.  Plaintiff complained of pain of the entire back and was unable to touch his toes due to complaints of lower back pain. A.R. 149. Finally, Plaintiff's grip strength in both hands was 3/5 and Plaintiff complained of tenderness and pain in both hands when making grips.  A.R. 149.

Dr. Buttan diagnosed Plaintiff with generalized osteoarthritis, diabetes mellitus, uncontrolled, and a history of cholelithiasis.  Dr. Buttan recommended that Plaintiff obtain treatment for his cholelithiasis, and be prescribed medications to treat his arthritis and to regulate his blood sugar.  A.R. 149.

Dr. Buttan noted that there were no restrictions regarding Plaintiff's ability to sit and that he should be able to stand for about four to five hours with a normal break, as well as walk for about two hours with a normal break.  A.R. 149.  However, Dr. Buttan did not think that Plaintiff could do any work involving even minimal physical exertion due to pain.  A.R. 150. Furthermore, Plaintiff would be unable to do any work with his hands such as manipulating small tools, instruments, or work on a computer or typewriter keyboard due to arthritis in his hands. A.R. 150.

On April 25, 2006, Dr. Fast prepared forms entitled "Physical Residual Functional Capacity Questionnaire" relating to Plaintiff. A.R. 151-158.  Dr. Fast indicated that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and sit for about six hours in an eight hour workday, and had unlimited pushing and/or pulling ability. A.R. 152.  Dr. Fast found that while there was a history of shoulder pain of six years, Plaintiff's x-rays were normal. A.R. 157. Additionally, Plaintiff has been noncompliant with the recommended treatment for diabetes and refused treatment for his gallstone/pancreatitis problem.  A.R. 150.  Dr. Fast noted

that Dr. Buttan's exam was based on findings that were not objective and which were due to symptoms for which Plaintiff takes no medication. A.R. 157. Finally, Dr. Fast explained that a "light RFC gives credence to [Plaintiff's] longitudinal history of arthralgias, diagnosed as [osteoarthritis], but takes into account the partial credibility of [Plaintiff] and the inconsistency of [Dr. Buttan's medical source opinion] which is based on subjective factors. A.R. 157.

On January 19, 2007, Dr. Glaser prepared forms entitled "Physical Residual Functional Capacity Questionnaire" relating to Plaintiff. A.R. 160-166. Dr. Glaser diagnosed Plaintiff with generalized osteoarthritis and diabetes mellitus. A.R. 162. Dr. Glaser indicated that Plaintiff could occasionally lift and carry twenty pounds, frequently ten pounds, could stand and/or walk for about six hours in an eight hour work day and had unlimited pushing and/or pulling abilities. A.R. 163. Dr. Glaser noted that Plaintiff had not been seen for over two years for his diabetes. A.R. 160. Dr. Glaser also noted that although Plaintiff had "decreased grip strength, x-rays of his hands did not reveal any significant findings of degenerative changes."[5] A.R. 161 Dr. Glaser further noted that Plaintiff complained of pain with leg raising exercises, x-rays of Plaintiff's lumbar spine were normal. A.R. 161 .

On March 23, 2007, Plaintiff was examined by Dr. Trapse. M.D. at the Lindsay Health Center for groin pain. A.R. 170. Blood work completed at the Hillman Health Center Clinical Laboratory on March 23, 2007, indicated a hemoglobin A1C level of 9.2 reflecting a diabetic condition in the poorly controlled range. A.R. 173. Plaintiff was subsequently examined by Dr. Trapse on April 6, 2007 and May 11, 2007, and was diagnosed with diabetes mellitus, hypertension, and neuropathic pain. A.R. 169, 169. He was prescribed Ibuprofen and Neurontin at both visits. A.R. 168, 169. At the appointment on April 6, 2007, Plaintiff complained of leg pain. A.R. 169. On May 11, 2007, Dr. Trapse noted that the leg pain had improved with medication. A.R. 168.

Plaintiff was examined by Dr. Trapse again on June 1, 2007. Plaintiff complained of pain in his ankles and knees for two weeks which was noted to be moderately controlled with

---

[5] Dr. Glaser noted that there was a small cyst on Plaintiff's middle finger of his left hand, however it was doubtful to be of any clinical significance. A.R. 161.

Ibuprofen A.R. 167. In addition to the diagnoses listed above, joint pain was noted and Plaintiff's dosage of Ibuprofen was increased. A.R. 167.

ALJ's Findings

The ALJ determined that Plaintiff suffers from diabetes, osteoarthritis of the left shoulder, and degenerative changes to the lumbar spine. A. R. 17. Nonetheless, the ALJ determined these severe impairments did not meet or equal any listing impairments resulting in a disability finding. A.R. 18.

Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. He could lift and carry ten (10) pounds frequently and twenty (20) pounds occasionally. A.R. 18. He could sit for a total of six hours in an eight hour work day, and can stand and walk for a total of six hours. A.R. 18. He can also occasionally finger and feel and frequently handle. A.R. 18.

Given this RFC, the ALJ found that Plaintiff could not return to his past work. A.R. 19. Nevertheless, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy. A.R. 20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since August 25, 2000; (2) has a severe impairment based on the requirements in the Regulations (20 CFR §§ 404.1520(c) and 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) cannot perform any past relevant work; yet (5) retained the RFC to perform jobs that exist in significant numbers in the national economy. A.R. 17-20.

Here, Plaintiff argues that the ALJ's findings are incorrect because the ALJ did not give specific and legitimate reasons for rejecting Dr. Buttan's report. Plaintiff contends that contrary to the ALJ's findings, Dr. Buttan's assessment and examination is supported by the observations and examinations of the treating physicians. Finally, Plaintiff argues that the ALJ's adverse credibility assessment was erroneous.

///

**DISCUSSION**

A.  <u>Rejection of Dr. Buttan's Report</u>

In determining that Plaintiff was not eligible for benefits, the ALJ noted that Dr. Buttan, the examining physician, reported that Plaintiff could not do any work, including minimal work, with his hands due to arthritis. A.R. 19. However, the ALJ gave this testimony little weight because Dr. Buttan's opinion was based largely on symptoms of pain for which Plaintiff took no medication and the findings were not entirely objective. A.R. 19. The crux of Plaintiff's argument is the ALJ's rejection of this report was improper because there are objective findings of Plaintiff's arthritis limitations in Dr. Buttan's report, as well as in the progress reports of Plaintiff's treating physicians.

Dr. Buttan is an examining physician and therefore his report can only be rejected if contradicted by another doctor for specific and legitimate reasons that are supported by substantial evidence in the record.[6] *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995) (ALJ may reject the testimony of an examining, but non-treating physician, in favor of nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by the substantial record evidence); *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (citations omitted) (the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence).

A review of the record demonstrates that the ALJ gave specific and legitimate reasons for rejecting Dr. Buttan's report. The ALJ stated the following:

> Dr. Buttan opined Mr. Scott could stand for four to five hours and walk for two hours, but did not think that Mr. Scott could do any work, including with his hands, involving physical exertion even minimally because of the arthritis. Dr. Buttan's opinion is based largely on symptoms of pain for which Mr. Scott took no medications, and his examination was not entirely objective. A.R. 19.

---

[6] Although Plaintiff argues that the progress notes of Plaintiff's treating physician support Plaintiff's complaints of pain, the treating physicians did not offer an opinion in this case. Plaintiff initially argued that the ALJ needed to give clear and convincing reasons to reject Dr. Buttan's assessment, however, in the Reply, Plaintiff concedes that the ALJ need only give specific and legitimate reasons for rejecting the report. Doc. 16 at pg. 2. Accordingly, both parties agree that the report can only be rejected if it is contradicted by a nonexamining doctor for specific and legitimate reasons that are supported by substantial evidence in the record.

10

Plaintiff argues that Dr. Buttan's report is based on objective findings including tenderness on Plaintiff's left foot, back, and hands, and reduced grip strength. Plaintiff was also unable to touch his toes due to pain in his lower back.  However, with the exception of reduced grip strength, all of these findings, including the tenderness, was based on Plaintiff's subjective complaints and refusal to perform bending.  A.R. 149. These are not objective indicators.  In fact, the objective tests that Dr. Buttan performed revealed that although Plaintiff complained of pain, the range of motion in his knees and shoulders were normal, there were no neurological deficits, Plaintiff's deep tendon reflexes were normal, his gait was normal, and he did not require an assistive device to walk. A.R. 149.

Plaintiff also argues that progress notes of Plaintiff's treating physicians support an objective finding that he suffered joint pain, shoulder pain, and back pain over time. A.R. 125, 129, 131, 134, 139, 167, 169.  While Plaintiff points to these reports in support of his position, a close review of the chronology of the visits and the treatment Plaintiff received actually supports the ALJ's analysis and conclusion.

For example, Plaintiff was first examined by Dr. Leticia Escoto for shoulder pain in October and November 2000, at which time a rotator cuff injury was noted, an x-ray revealed arthritis, and Plaintiff was prescribed Torodol IM and given Motrin. A.R. 134, 136-137.  Plaintiff was given Kernalog and Lidocaine into his shoulder and immediately felt relief.  A.R. 136.  An orthopedic referral was made. A.R. 134.

Plaintiff was not seen by Dr. Escoto again until five months later on April 1, 2001, after he was involved in a car accident.  A.R. 129.  He was referred to an orthopedist for neck pain. A.R. 129.  On April 16, 2001, x-rays were completed which were negative and Plaintiff was diagnosed by Dr. Felinger with cervical myofasciitis and atrophy of the left shoulder girdle.  A.R. 132-133.  He was prescribed Parafo Forte with Tylenol and given an exercise regimen.  A.R. 131-132.  Plaintiff returned to Dr. Escoto on April 30, 2001 for a neck sprain, a left rotator cuff injury, and atrophy of the left shoulder. A.R. 129. Plaintiff was again referred to a orthopedist and Dr. Escoto noted that Plaintiff  had been previously referred and was sent back.  A.R. 129.  It

does not appear that Plaintiff ever saw an orthopedist after Dr. Escoto's second referral in April 2001.

Instead, Plaintiff was not seen by Liberty Lomeli, a physician's assistant until six months later on November 1, 2001, for back pain. At that time, he was diagnosed with osteoarthritis and Naprosyn was prescribed. A.R. 125. Although Plaintiff had been treated by doctors in the interim for his diabetes, he was not seen for pain until March 23, 2007, almost six years later, when he was examined by Dr. Trapse for complaints of groin pain. A.R. 170. Plaintiff subsequently saw Dr. Trapse for leg pain on April 6, 2007, he was diagnosed with neuropathic pain and was prescribed Neurontin and Ibuprofen. A.R. 169. On May 11, 2007, Dr. Trapse noted that the leg pain had improved with the medication. A.R. 168. Plaintiff was examined by Dr. Trapse again on June 1, 2007 for pain in his ankles and knees which was noted to be moderately controlled with Ibuprofen. A.R. 167.

The Court notes that there were long periods of time between visits to medical professionals for these conditions. Plaintiff was seen intermittently between the years 2000 and 2001 and there was a gap of six years until 2007 when Plaintiff next was examined by a doctor for complaints of pain. A.R. 125, 129, 131-132, 134, 136-137, 147, 167-170. As noted by the ALJ, Plaintiff had not received treatment consistent with chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit or attendance at a pain management clinic. A.R. 19. To the contrary, although some of the medications prescribed did provide Plaintiff some relief, his office visits were sporadic. A.R. 136, 168. Even Dr. Buttan acknowledges that Plaintiff was not on pain medications and recommends that Plaintiff use them. A.R. 17, 149. Similarly, the ALJ properly notes that although Plaintiff has a history of shoulder pain going back six years, recent x-rays were normal. A.R. 19, 157. Further, neck, back and knee pain go back five years with essentially normal x-rays of the lumbar spine. A.R. 19, 161. X-rays of Plaintiff's hands were also unremarkable. A.R. 161. *Parra v. Astrue*, 481 F. 3d 742 (9th Cir. 2007) (subjective complaints of bursitis-related knee pain that were contradicted by laboratory tests showing knee function within normal limits was a basis for an adverse credibility determination regarding pain).

1    Based on the above, the ALJ properly rejected Dr. Buttan's report because it was based
2 Plaintiff's subjective complaints rather than objective data.  Both Dr. Fast and Dr. Glaser, the
3 nonexamining physicians, explained why Dr. Buttan's opinion was not supported.  For example,
4 Dr. Glasser explained that a light RFC was not appropriate because although Plaintiff had
5 decreased grip strength, the x-rays did not find any degenerative changes.  A.R. 159, 161.
6 Similarly, Dr. Fast found that Dr. Buttan's opinion was "based on symptoms and exam findings
7 that are not entirely objective and are due to pain for which the claimant takes no medication."
8 A.R. 157.  Because Plaintiff's subjective complaints of pain were not supported by the objective
9 data including normal x-rays, the ALJ properly gave specific and legitimate reasons that were
10 supported in the record for giving the nonexamining physicians' reports greater weight. *Bayliss*
11 *v. Barnhart*, 427 F. 3d 1211 (9th Cir. 2005) quoting *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th
12 Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician
13 if that opinion is brief, conclusory, and inadequately supported by clinical findings); *Batson v.*
14 *Commission of Soc. Sec. Adm.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ correctly gave treating
15 physician's opinion minimal weight in light of lack of supporting medical evidence).
16 B.    *Credibility*
17    The rejection of Dr. Buttan's report was also based on Plaintiff's lack of credibility
18 regarding his subjective reports of pain.  The ALJ is required to make specific findings assessing
19 the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735
20 (9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other
21 non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).
22 In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible
23 and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834
24 (9th Cir. 1996) quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584
25 (9th Cir. 1988)).  "An ALJ may reject a treating physician's opinion if it is based "to a large
26 extent" on a claimant's self-reports that have been properly discounted as incredible". *Tommasetti*
27 *v. Astrue*, 533 F. 3d 1035, 1041 (9th Cir. 2008) citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169
28 F.3d 595, 602 (9th Cir.1999).

In making this determination, the ALJ conducts a two-step analysis to assess subjective testimony. Under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. *Tommasetti v. Astrue*, 533 F. 3d at 1039. If the first step is met and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* Factors the ALJ may consider in weighing a claimant's credibility include "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* citing *Smolen v. Chater*, 80 F. 3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d at 959.

The ALJ considered the factors set forth in 20 CFR §§ 404.1529(c) and 416.929(c) in evaluating Plaintiff's subjective complaints of pain. In addition to finding that Plaintiff's subjective complaints regarding his pain were not supported by objective data as previously outlined, the ALJ found that "[p]laintiff's medically-determinable impairment could reasonably be expected to produce his alleged symptoms but his statements about the intensity, persistence, and limiting effects of those symptoms were not credible." A.R. 19. In doing so, the ALJ properly considered the fact that Plaintiff had not received treatment for chronic pain as a basis for discounting his credibility. To the contrary, Plaintiff was not treated for pain for almost a six year period and his compliance with treatment was marginal. A.R. 125, 129, 131-132, 134, 136-137, 147, 167-170. "Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d at 751 citing *Johnson v. Shalala*, 60 F. 3d 1428, 1434 (9th Cir. 1995); *Tommasetti v. Astrue*, 533 F. 3d at 1039 (ALJ properly inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not seek an aggressive treatment program); *Meanel v. Apfel*, 172 F. 3d 1111,

1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant complained of intense pain but only received minimal and "conservative" treatment).

Similarly, the ALJ properly relied on the fact that Plaintiff had been noncompliant with recommended treatment for his diabetes and had refused recommended hospital care for his pancreatitis problem as a basis for the adverse credibility finding. A.R. 19. *See*, *Flaten v. Sec. of Health and Human Services*, 44 F. 3d 1453, 1464 (9th Cir. 1995) ("ALJ could draw an inference for the general lack of medical care for [impairment]"); *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989) (claimant's failure to assert a reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony").

The ALJ's determination that Plaintiff was noncompliant with treatment for diabetes and pancreatitis is supported in the record. Plaintiff was first seen in November and December 2001 for a blood sugar check, but did not seek treatment again until April 2004 at which time his diabetes was uncontrolled. A.R. 17, 125, 121, 123. He did not seek treatment for his diabetes again until January 2006. A.R. 17, 110, 113. In April 2006, Plaintiff's non-compliance with his treatment for diabetes was noted. A.R. 113. Similarly, in March 2007, blood work revealed that Plaintiff's diabetic condition was in the poorly controlled range. A.R. 173. Plaintiff also refused recommended hospital care for his pancreatitis problem. A.R. 147.

In sum, the ALJ offered specific, clear, and convincing reasons supporting his adverse credibility determination. Based on the above, the ALJ did not err in finding Plaintiff not credible and weighing his testimony accordingly.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Jose Scott.

IT IS SO ORDERED.

Dated: **July 30, 2009**                    **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE